May it please the court, my name is Neil Fox and I represent the appellant, Mr. Murillo. When the government discriminates against a potential juror based upon ethnicity, this is an issue of significant public importance that needs to be discussed and resolved in open court and not in a back room. Well, just a minute. Did anybody make this challenge before filing this appeal? No. And why should I hear it? Because it's plain error and it's structural error. Did you even object? No. So then at that point, are we on plain error review or waiver? Yes. We're on plain error review. There was never a waiver of the right to a public trial in this case. So you're going with forfeiture and plain error? There's no forfeiture. I mean, the government may argue. That's what plain error is. That's what plain error is. Right. But there was never any affirmative waiver of the right to a public trial. Okay. We get that. That's your position. Right. So what's the difference between having a Batson challenge discussed at sidebar and having it in a side room as long as the microphone's on and the recording's made? Well, two differences. First off, it's bad to do it at sidebar to begin with. It is something that needs to be discussed in open court. Okay. So you're talking to three people who've been trial court judges and I'm just imagining the logistics of how you do this. You ask the jurors to step out. Yes. So there's security problems, right? And the whole part, they're not only security problems, but I'm troubled that it could, in order to the detriment of defense, because the point of Batson is we were so concerned about implicit bias. We don't like prosecutors to sit around and think about it. The notion is, on your feet right now, tell us why'd you strike this juror. It's supposed to be very quick so that we can really get the honest, unvarnished truth. And if we say, ladies and gentlemen, I'm going to ask you to step out and then the marshals have to move people around, it's going to take longer. Well, that may be the case. And it might be a hundred people. Well, in this case, I don't think the jury pool was a hundred people, but it's not a big deal. I've done trials as well to ask the jurors to leave. When you are discussing a legal issue- I mean, the bottom line is, my colleague is really going right at it. You're saying a public trial is one where the jurors are gone, all the prospective jurors are gone. I expect that's what you're saying. You're not really saying everybody, including the prospective jurors, ought to hear all of this. No, but the public should. You're just saying that the public should. Correct. What's the difference in doing it on a record is made, it's publicized, it can be said. The record was made. It's better than the sidebar because the record was made. Well, the record actually, Your Honor, was not made. The only reason we have a record is because of a conviction. There wasn't even a notation in the docket that there had been a Batson challenge. And the strike sheet that has the names redacted- You're saying what happened in this particular situation is that they went out, rather than having a sidebar, and they didn't make any record? The record was sealed. Well, but it exists, right? Well, it took some doing for me even to uncover it. So here's the part that I'm not sure exists. There's a sheet, and this is truly an invitation to correct me, we've got a sheet for the four cause challenges. Was that off record and just a pass back and forth? No, the four cause challenges took place at sidebar. So what happened? So the judge went through, there are some references to it in the transcript, like about two, three pages of the transcript. There was discussion about who's off, who's on, what cause challenges there were. And there's a written record of that? I don't think there's a written record. There's a back and forth? No, the back and forth is for the preemptory challenges. Wait a minute. And so I've attached that, it was in volume six of the record. It was a sealed document in the district court. I filed it and it became unsealed. Wait, I just looked at it. So hang on. And you think these are the preempts? Yes. Okay. And then next to juror number eight, whose name is obscured, it's still redacted. I had to file a motion to get that. I see. Okay. It says Batson. Right. And so they, I'm not sure then, I appreciate that answer. So then why are you trying to tell us that this wasn't on record? They stepped into a side room, there's eight people in the side room, it's recorded. It was on the record. But no one knew what was happening. And I would submit, Your Honor, it would- Nobody knew what was happening. They were all in there. Well, not anyone in the public gallery. Oh, I see. The public did not know what was happening. Is it your position that there's some benefit that's consistent with the right to an open trial, public trial, to having a member of the public at random, or a few members of the public step into the room with that huddled group? There's no reason for it to go into the back room. And I would submit, Your Honor- Well, there is. If there isn't, then you've really got a problem. My understanding is your argument is that there's some benefit to airing this in front of the public. Yes. Right. Well, so then one logistical answer to your problem, to my problem as a logistical problem, would be to not exclude all members of the public from the back room. And you just fought me on that, so now I'm truly befuddled. No, no. I guess what I'm saying is, this should not be done in the back room. This would- Well, but just a minute. What room it's in is not the problem. Listen to her question. Again- Okay. I don't think you're very much listening. She's saying the reason they went in the back room is to keep the jury from hearing. Correct. That's it. So all you're saying is, all they needed to do is make sure that the public could have gone in the back room, too, rather than send the jury in the back room, the court went in the back room. Correct. Because there were too many jurors. So what was- So one way to answer the logistical problem of having the jury move around, in other words, one way to let the jury sit there, and to accrue the benefit you're trying to accrue, it seems to me, is to not exclude the public from the back room, and you seem to object to that. I'm sorry. I misunderstood what you were saying. That happens a lot. You're in my line of work, but go right ahead. The problem is that the public was not in the back room. The courtroom could be anywhere. Counsel, that's what I just said. Right. And you objected. So are you now in a- No, I- Are you now in a- We just miscommunicated. Are you now in a position where you agree that one option the trial court had was to invite members of the public into the back room? Sure. It would have been more convenient if the judge wanted to keep the jurors in their seats to go next door to another courtroom. I mean, the courtroom could be anywhere. Okay. So let's pass that question. Let's go to the plain error doctrine then. I'm having a tough time understanding how you could say on our precedent that there's plain error here. Well, it's a clear and obvious error. Well, just a minute. There may be an error. We're not even sure about that. But even if there is, what case says you cannot do this as you do a sidebar? Well, there are cases- What case says that? Presley says that jury selection needs to be done in open court. Well, I understand, but Presley doesn't say anything about why you can't have a challenge to a juror done as a sidebar. Well, two steps to that. First, I say that the Washington Court of Appeals case actually that does say the Batson challenge in particular has to be an open court. So it's not your precedent, but it is precedent. So do you mean open court? There's courtroom closure cases where the door's locked. Right. And of course, that's not happening here. Well, in essence, it is. So that's my point. You're really arguing that every sidebar would be a courtroom closure. Is that right? Not just a Batson, but any sidebar. This is worse than a sidebar. Counsel, could you answer the question? Because it really helped me analytically to understand your position. Every sidebar is not a courtroom closure. There are cases that say that the court can deal with things at sidebar briefly if it's a trivial closure. It's my position that this is not a trivial closure because this is- Every sidebar is a closure in your book. If it deals with non-trivial matters. If it's an issue of something of a critical juncture of the trial, that cannot- And you're saying this is not trivial? This is not trivial. What are we going to do in this particular matter? We're going to rule on whether we remind the prosecutor? What are we going to do? If I have a Batson challenge, and I make that decision, and nobody hears how I make the decision, the very fact that I do not allow the challenge, isn't that a remind of the prosecutor? And that was done in the open court. Well, it was not done in the open court, it was done in a back room. Well, but they didn't get to have the jury taken away. And that's demonstrable in the open court. And that's demonstrable. There was the juror. But the issue was the government's discrimination. I'm just saying, the issue may be the government's discrimination, but it seems to me that when somebody makes an objection, or wants to move a juror out, challenge, and another person makes an objection to that, and I say, objection sustained, the prosecutor has received their reprimand. But they didn't receive the reprimand in a public setting. Well, but, just a minute. The juror sat. The juror sat, that's true. So he didn't get what he wanted. The issue, though, is when you have... When the arrest of the juror, the jury comes to see it, or the public, and they saw that they wanted, and this was a for-cause objection, wanting that person off of there, and the juror sat. They let the juror sit. The prosecutor has been reprimanded. But not in a public... Well, just a minute. The only thing you're saying is, you didn't say, well, you are very much a discriminatory prosecutor. Is that what you're wanting them to say? In essence, when you make a Batson challenge, you are calling out your opponent for engaging in discriminatory conduct. And there is a public benefit for that to be taking place in open court. The Breonna Waters case, U.S. v. Waters, was a case out of the same district where the judge closed the pretrial omnibus hearing at which a motion to dismiss based upon government misconduct was litigated. The court found error. It didn't reach the issue of structural error because it was reversing on other grounds. But what the court said is that when we're dealing with issues of government misconduct, this is a type of issue that has to be aired out in public. Counsel, right there, you said government misconduct. And Batson speaks of intentional discrimination. We all know, however many years it's been since Batson, that there's another problem that may be afoot here, which is not misconduct by the government, I think. What it is, even if it's a Batson challenge, is that we all have biases. We all have implicit biases. And so calling that out, which is, I think, I agree with Judge Smith, that's what this judge did. Right. The judge heard this Batson challenge, and I'm willing to say that this wasn't intentional misconduct by the government, and yet it was a, I think, a silly challenge. I will say silly, not a silly challenge, forgive me, a silly response. Because what he was saying, all this juror said was, since you asked, I'm summarizing, but he basically said, since you asked, no, I don't think this is a jury of this person's peers, by the way. I'm looking around, and this is a Caucasian jury, and it's a Hispanic defendant, and I'm the only Hispanic here. And that was then the basis for the government's concern about this juror, right? That's implicit bias. That's different than intentional discrimination or misconduct. We don't have a record. You're describing it as misconduct, and the reason this matters is because you're talking about this, the cleansing, if you will, the benefit of having this in public court. If there's misconduct, that's one thing. What about if it's just implicit bias, the prosecutor doesn't even recognize it in his or herself? Again, we all have those. We don't know in this case whether it was implicit bias or intentional discrimination. But when you have the government that engages in that... In what? Engages in what? In discrimination, either implicit or explicit. There's a public benefit where the government is making itself out, and I'm not saying this facetiously, but to be the protectors of law and order. Okay, so if it's implicit bias, just if you would, please. I think you have a much stronger argument for intentional discrimination. If it's implicit bias, and I don't mean to minimize this in any way, but if it's implicit bias, the prosecutor doesn't recognize in him or herself, why is there additional benefit to having that checked in open court as opposed to the judge saying, no, I'm not going to allow that? So that the public, my client's family, whoever is present can see that in fact there is implicit bias, that it's real, that it exists, and it exists in this very room. Well, we all know it's real and that it exists. Is the idea that they can see that it is checked and the court does not allow it? Yes. And that the motives of the prosecutor may not be entirely pure. And I don't know this particular prosecutor. I don't know the history with this prosecutor, and I'm not going to... But the court, forgive me for interrupting, but your time is ticking. The court did check this. The court did recognize it as implicit bias, and the juror was seated. That's Judge Smith's point. So can you help me with that? He recognizes in a closed proceeding, in a proceeding from which the public was excluded. And if I... I'll just take two seconds. But the problem comes, and I guess this is the one I don't quite see where you're going. Every one of the objections that are made during a trial, unless we send the jury out every time, and therefore make the jury mad, and very mad at the defendant for having them there, which is the worry that I have, having sat as a trial judge every time they go out, get mad, you've got to have a few sidebars. And so therefore you have sidebars in order to eliminate having all these times where you send the jury out and where you don't. And every objection that you make can be grave. And all you're saying is a Batson challenge is more grave than any other, and a Batson challenge being more grave than any other, you can't even do it in a sidebar. Is that your argument? No. What I'm saying is that it's an integral part of jury selection. But just a minute. It doesn't matter. There are lots of jury selection things that we do in sidebars. Are you saying the Batson challenge is the most important? It is a core function of jury selection. It is more important than someone's hardship exemption. But if I could just... What do you mean? What about, then, his prejudice? Well, but this is... I mean, whether the jury is prejudiced or not, whether they've been in an accident like this or not, whether their kid's been in an accident like this or not, I've had a lot of sidebars, and I don't see any reason not to have a sidebar when the juror explains their prejudice. And so then, you don't take everybody out to hear that. Well, if I could... Such prejudice all the jurors are hearing. If I could finish on one point, the difference between a sidebar in a closed room or a back room. At least at a sidebar, there's something going on in open court where everyone can see what is taking place. Just a minute. If that's your best argument, move to your second. Because there's some things in the sidebar you don't even have a record. Well, there ought to be a record. Well, there isn't. Okay. And I do admit, being of my age, that there were times in practice when I was doing trials where we did things the way that they shouldn't have been done. With not in open court, at sidebar, in chambers, that's changed. But... No, it hasn't changed. Okay. Well, I'm asking you to recognize that there has been an evolution. But the problem with the closed courts... Are you just saying I'm old? Is that what you're trying to say? Yeah. And since I have the same memory... I just turned 60, so I'm with you. Well, I'm just... I'm being very... I'm being very... I'm trying to understand what you're saying, because I go do trials right now in the Idaho District Court. Well, I think the current jurisprudence of this court and the Supreme Court discourages off-the-record backroom court proceedings. I'll reserve the rest of my two minutes or minute and 56 seconds. Thank you. Thank you. Thank you, counsel, for your helpful argument. We'll hear from the government. Good morning. Good morning. Charlene Koski for the United States. May it please the court. Turning directly to the Batson issue. It is Mr. Murillo's burden to show plain error in this case, and he has failed to meet that burden if this court decides to reach the issue, because it was forfeited, plain error does apply. Without precedent, federal precedent, that says that the Sixth Amendment right even attaches in this scenario, he can't prevail on his claim. Well, I don't know about that. It's a puzzle, isn't it? He's on direct appeal, first of all, so we're not looking at the whole EDPA layer. And the Supreme Court, our jurisprudence is very clear, this is a very critical part of the trial. That's why it's structural error if there's a mistake. And we all have to be very concerned about implicit bias. It's true, Batson and the majority spoke of intentional discrimination, to be sure, but the concurrence didn't. This is a real issue, and we all know that. Sure. What I struggle with is there has been this evolution, and we try to be, without aging myself too much, I certainly remember, and I think defense counsel is right, we've come a long way in terms of stressing, stressing, stressing the importance of open trial. And technology has allowed us to do a better job of that. But it's tough with this whole jury panel there, and I'm very concerned, I haven't been shy about telling you, I'm very concerned about the logistics, just what would it be asking a trial court judge to do? And the only thing I can come up with is in those courtrooms where you do have a side room available, and of course a whole lot of them don't, but this one happened to, why not have members of the jury step in there? Forgive me, members of the public step in there if they choose to do so. Is that an option that would work? Well, if the Sixth Amendment right attached, it's operating under that presumption, which I would note that Weaver did recognize the importance of the right and that it was structural, but also noted that it's different, right? It was not only that there was no objection, but also that the nature of the right itself often gives way to exactly what you're talking about, which is the court's discretion under Criminal Rule 24 to control its courtroom. And in this case, and under Iverson, this court's precedent, if you're going to, when you're trying to determine whether the Sixth Amendment right attaches in the first place, you look to see whether the Waller factors are implicated, and then if so, you go on to the procedural requirements, and here those four Waller factors, they're not all four implicated. Appellant emphasized the Weaver case and the government misconduct aspect, which is something that was emphasized by this court in Weaver, but that involved a government, involved a motion to dismiss an indictment based on government misconduct, going to the heart of the government's case against the defendant. In this type of situation, Batson, as you suggested earlier, is not about just the government misconduct. First, either party can raise a Batson challenge. It's really a procedural check on the juror's equal protection right under the Equal Protection Clause to not be excluded based on a protected factor. So, it does not go to witness testimony. It does not go to the government's conduct in bringing its case against the defendant. It just simply doesn't rise to that level, and my position... It doesn't rise to the level... Forgive me. You're missing me right there. Right. What? It doesn't... It doesn't rise to the same level of government misconduct that is described in cases like Weaver, where you're actually talking about government misconduct as it... One of his stronger points on my scorecard. Right. This is one of his stronger points, because it's not misconduct. Right. I give you that absolutely. I don't... I'm not casting any aspersions. It's just that we all have these implicit biases, and it's a very important issue, which is why structural error attaches. So, what's the other part of the Waller test that you think is not satisfied here, or not implicated here? I think three and four, encouraging witnesses to come forward and discouraging perjury, are not implicated at a Batson challenge. I think number one and two argue... I can't imagine a situation where number one is not implicated. Ensuring a fair trial seems to be at the heart of everything that happens. And number two also will come up in most situations. But three and four, I don't see how they're implicated by the Batson issue, by a Batson challenge. And I would say that because not all four of those factors are implicated here, it is appropriate to leave this in the discretion of the district courts under Criminal Rule 24, where they have, and where the public trial right does often give way to these considerations of the court. And this court has recognized, and the Supreme Court has recognized, this is something... The right to public trial does not restrict a district court's ability to hold sidebars and to manage its courtroom. And I would argue that because you don't quite hit that threshold under the Waller factors, whether the Batson challenge issue falls under Rule 24 and the court's discretion. And I also, if there's a concern about having public access, this court has also said that having the record made, which it was in this case... But it was sealed, he said. Is that right? No. The only thing that was actually sealed was the preemptory challenge sheet. The forecast challenges were also on the record. So it came up to us the way it came up to us. And I think... I'm not sure because I was mistaken about which sheet I was looking at. So could you just walk me through this and make sure I have this exactly right? How would it have looked if I hadn't been a member of the Ninth Circuit Court of Appeals and I had walked into the courthouse and just tried to look at the public record? What would I have seen? You would have seen that the transcript... I think the docket entry is number 120. It was treated just like any other transcript. That it said, you know, you have a certain amount of time to ask for redactions. At that point, you know, it will be 90 days. You can order it or you can go to the courtroom and ask for it or to the court, to the clerk's office to ask for a copy of the transcript. And I would have seen a sealed part of the record? No. You would not have seen... The only thing that was sealed was the actual sheet that the attorneys wrote on. The transcript of what occurred in... For the preemptory challenges. For the preemptory challenges. That's the only part of that proceeding that was actually sealed. The conversation that took place and the actual challenges themselves were all recorded on the record, and that transcript was not under seal at any point, and it was available to the public in the same manner that any other transcript would be made available to the public. So, it was like Ivester. A brief non-public hearing related to jury selection or misconduct held in the presence of all parties does not violate the public trial guarantee, particularly when a record is made and publicized. Correct. Thank you. Are there no further questions? Judge, any questions? The government asks that you affirm. Thank you very much. If someone walked into the courthouse right after this trial, they would have seen no record of a Bastion Challenge. The docket entry for the strike sheet didn't appear on the public docket. So, it took some time to find out what docket entry there actually was. But a record was made, and it was publicized. There was no record. Maybe not right at first, but it was publicized. Well, only after we appealed. If I had been a member of the defendant's family sitting in the back of the courtroom, I would have seen the objection made, and I would have seen everybody go into a back room. Is that right? No, you wouldn't have seen an objection made because the objection was listed on the strike sheet. And no words were spoken? No words were said. The judge said, I'm going to talk to the lawyers about this form. And it would be then as if we all – And then they went into the room. Right. And then they came back, and the juror was seated. But the public wouldn't have been aware that an objection had been made. Right. There was no record made. With regards to the Waller factors, there is testimony in a sense in this proceeding because the judge has to make a determination that the race-neutral explanation provided by the prosecutor is valid, and that is based upon a credibility determination. So in that sense, this qualifies. It's not testimony related to the facts of the case, but it is testimony in that sense, and it's different than just a legal argument. Okay. But the challenge here was an – I'm going to paraphrase shamelessly. The prosecutor was concerned that this juror had expressed that this wasn't a jury of the defendant's peers. Right. And the judge had to make a determination, was that a valid race-neutral explanation? Right, which may or may not be a credibility determination. It might be that the prosecutor legitimately has this view, and then upon articulating it, the judge says. Right. The Supreme Court has said that step, though, is based upon quite often demeanor of the prosecutor. Yes, if it's intentional discrimination, but it may be a sincerely held silly objection. It may be. And that would still justify the Batson ruling that the judge made here. And we don't know in this case because that piece of it is not a record. Finally, with regards to a vesture, there was an exception in the vesture that talked about issues about government misconduct. And this, I concede, may not be misconduct in the sense of the FBI hiding an exculpatory witness, as they did in Wathers, but this is discrimination based upon ethnicity. Thank you. Thank you both for your helpful argument. We'll take this case under advisement and stand in recess for the day. All rise.
judges: Fernandez, N.R. Smith, Christen